```
                UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF MASSACHUSETTS
```

ALEXANDER A. OYENUGA,            )
                                 )
         Petitioner              )
                                 )     Civil Action No.
    v.                           )     05cv10170-PBS
                                 )
ATTORNEY GENERAL JOHN ASHCROFT,  )
ET AL.,                          )
                                 )
         Respondent[1]           )

RESPONDENT'S RESPONSE TO COURT'S ORDER DATED MARCH 25, 2005, AND MOTION TO VACATE EX PARTE ORDER FOR STAY OF REMOVAL

Respondent responds to the Court's March 25, 2005, Memorandum and Order of Transfer as directed, explaining the reasons for petitioner's several transfers, and undertaking in good faith to limit as is reasonably possible further transfers of petitioner.  See Attachment A, Declaration of acting New Orleans Field Office Director Craig S. Robinson.

Additionally, respondent moves pursuant to Fed. R. Civ. P. 65(b) moves for vacation of the emergency Judge's March 31, 2005, ex parte order staying execution of removal, or for modification of its terms in connection with a transfer of this case to Louisiana.  See infra.

As this Court has recognized in its March 25, 2005, Memorandum and Order of Transfer ("Memorandum and Order"), absent

---

[1] See 28 U.S.C. § 517 (providing for the appearance of the Department of Justice "to attend to the interests of the United States in a suit pending in a court of the United States").

'extraordinary circumstances', the Court "does not have personal jurisdiction over the Warden of the Plaquemine Parish Detention Center, in Braithewaite, Louisiana, and in most circumstances the case should be transferred there." Memorandum and Order, p.5.

The Court has also accurately noted that under Vasquez v. Reno, 233 F.3d 688, 696 (1st Cir. 2000), the First Circuit left open the possibility that "extraordinary circumstances" such as government action transferring an alien with a purpose to manipulate jurisdiction, could provide an exception to the otherwise strict in personam jurisdiction requirement. Memorandum and Order, p.4.

Petitioner was last in the district of Massachusetts in custody of the former Immigration and Naturalization Service ("INS") (now the Bureau of Immigration and Customs Enforcement) in 1998. At the time petitioner filed this action he was, and still remains, in Louisiana. Petitioner has been detained in Louisiana since June of 2004 and has been at his present detention location since September 20, 2004. Attachment A, ¶ 12. Petitioner has made no showing why it is any easier for him to filed a habeas action in the district of Massachusetts than in a district of Louisiana that has in personam jurisdiction over his custodian.

From the Declaration of acting Field Office Director Craig S. Robinson, Attachment A, it is apparent that petitioner's

transfers from one facility to another over the last 15 months have resulted from routine policy and guidelines in an attempt to house petitioner at locations appropriate to the purpose of his detention, viz., for execution of his removal from the United States. Attachment A, ¶¶ 9, 10. These detention locations were dictated by levels of staffing at the facilities in question, ¶¶ 10, 11, Attachment A, and the uncertainties attending the issuance of a travel document by Nigerian authorities, and other neutral factors. Id., ¶¶ 7-9. See generally 8 U.S.C. § 1231(g)("The Attorney General shall arrange for appropriate places of detention for aliens detained pending removal or a decision on removal."); cf. Van Dinh v. Reno, et al., 197 F.3d 427 (10th Cir. 1999) (District court lacks jurisdiction to restrain Attorney General from transferring aliens from one facility to another.).

    Because the Declaration of the Field Office Director establishes that there was no purpose or motive afoot to manipulate jurisdiction in this case, the Court should resolve in the negative its concerns that petitioner's "transfers may be motivated by an attempt to manipulate habeas jurisdiction." Memorandum and Order, p.4.[2]  Petitioner has been at his present detention location since September 20, 2004.  Attachment A, ¶ 12.

---

[2] Indeed, it is open to the Court to consider whether the habeas filing in this district from a petitioner presently detained in Louisiana who was last detained in Massachusetts by INS in 1998

Respondent has no plans to relocate petitioner to another facility, and has resolved not to transfer him outside the New Orleans Field office barring an emergency, see Attachment A, ¶ 15, or except as necessary to execute the removal order in his case. Attachment A, ¶¶ 12, 16.

The Declaration of the Field Office Director details the difficulties in obtaining travel document from the Nigerian authorities in the instant case, necessitating the continued detention of petitioner. The respondent has now been able -- prior to the Court's stay order issued today -- to tentatively schedule the removal of petitioner for April 12, 2005.

Respondent is conscious of the Court's expression of concern as to petitioner's transfers, and has resolved to make all good faith efforts to not transfer petitioner outside the New Orleans Field Office, barring emergencies of matters directly related to petitioner's removal from the United States. Attachment A, ¶ 16.

This Court should therefore vacate its ex parte stay order of removal and dismiss this case for lack of in personam jurisdiction of petitioner's custodian. Vasquez v. Reno, 233 F.3d 688, 696 (1st Cir. 2000) ("we hold that an alien who seeks a writ of habeas corpus contesting the legality of his detention by the

---

is not an attempt to have a Massachusetts court decide his case rather than a Louisiana court. See Vasquez v. Reno, 233 F.3d at 696("we categorically reject the petitioner's suggestion that the more favorable legal climate prevailing in the First Circuit constitutes an extraordinary circumstance.").

INS normally must name as the respondent his immediate custodian, that is, the individual having day-to-day control over the facility in which he is being detained."

In the alternative, the Court should transfer the case to a district court in Louisiana with in personam jurisdiction over petitioner's custodian, the Warden of Plaquemine Parish Detention Center, in Braithewaite, Louisiana, and modify the terms of the stay order to expire after 10 days from now, i.e., after April 10, 2005, unless sooner extended or vacated by that Louisiana court.

To the extent the Court might regard it as helpful in its ruling on this response and motion, the undersigned requests or will make himself available for hearing before the Court.

### CONCLUSION

Upon review of the Declaration of the Field Office Director, the Court should determine that it lacks in personam jurisdiction over petitioner's custodian, the Warden of Plaquemine Parish Detention Center, in Braithewaite, Louisiana.  Because respondent has established that the circumstances attending petitioner's transfers do not present the "extraordinary circumstances" exception adverted to in Vasquez v. Ashcroft, supra, and because respondent has responded to the Court's expression of concern by resolving in good faith to limit any further transfer of petitioner, Attachment A, ¶ 16,  the Court should vacate the ex

parte stay and dismiss the action, or transfer the action to Louisiana with the modification of stay terms as proposed above.

                               Respectfully submitted,

                               MICHAEL J. SULLIVAN
                               United States Attorney

                   By:  s/Frank Crowley
                        FRANK CROWLEY
                        Special Assistant U.S. Attorney
                        Department of Homeland Security
                        P.O. Box 8728
                        J.F.K. Station
                        Boston, MA 02114
                        (617) 565-2415

**CERTIFICATE OF SERVICE**

I hereby certify that I caused true copy of the above document to be served upon pro se petitioner by mail on March 31, 2005.

                               s/Frank Crowley
                               FRANK CROWLEY
                               Special Assistant U.S. Attorney
                               Department of Homeland Security
                               P.O. Box 8728
                               J.F.K. Station
                               Boston, MA 02114

ATTACHMENT A

DECLARATION

I, Craig S. Robinson, hereby declare and state:

1. I am the acting Field Office Director for the New Orleans Field Office, Bureau of Immigration and Customs Enforcement (ICE), United Stated Department of Homeland Security. I have held this position, and others similar in scope and responsibility, since March 1, 2002. I have worked for ICE, and its predecessor, the Immigration and Naturalization Service, for the past 27 years.

2. The New Orleans Field Office comprises the States of Alabama, Arkansas, Louisiana, Mississippi, and Tennessee. In my present position I have responsibility for all detention and removal operations within this field office.

3. This field office holds service contracts for detention space with local and federal facilities. These contracts offer to ICE the use of more than 3000 long-term detention beds.

4. In an attempt to be fiscally responsible, ICE encourages the transfer of detainees to the low cost beds within this Field Office whenever possible. This Field Office has access to some of the most cost effective facilities nationwide.

5. Alexander A. Oyenuga is an adult male citizen of Nigeria. His alien registration number is A20 750 982. He has a final order of removal, entered in absentia, to Nigeria. He is presently detained at Plaquemines Parish Jail in Braithwaite, Louisiana awaiting removal.

6. On October 8, 2003, ICE accessed the National Crime Information Center's computer system and created a "wanted" record for Mr. Oyenuga. Ten days

later the DeKalb, Georgia police department encountered Mr. Oyenuga during the normal course of their police duties, discovered the wanted record for Mr. Oyenuga and turned his custody over to local ICE agents in Georgia.

7. The Atlanta Field Office has responsibility for Georgia and does not have access to low cost long-term detention beds in sufficient numbers to support their routine duties. On January 5, 2004, responsibility for case management for Mr. Oyenuga's case was transferred from the Atlanta Field Office to the New Orleans Field Office. At the time of this transfer, Mr. Oyenuga was detained inside Etowah County Detention Center in Gadsden, Alabama. Efforts to effect Mr. Oyenuga's final order of removal have been carried out by officers of this field office since January 2004.

8. On April 18, 2004, the government of Nigeria issued a travel document on behalf of Mr. Oyenuga. On April 19, 2004, a repatriation flight to Nigeria departed the United States. Mr. Oyenuga was scheduled for that flight. However, ICE was unable to use the travel document before it expired and repatriate Mr. Oyenuga because he had previously filed his administrative motion to reopen and subsequent administrative appeal. Mr. Oyenuga remained detained inside Etowah until June 8, 2004.

9. The next scheduled repatriation flight to Nigeria was to occur in September 2004. The next one was scheduled for December 2004. ICE's repatriation flights to Nigeria generally depart from Batavia, New York. Nigerians who have been approved for removal are escorted to Batavia 2 to 3 days prior to the scheduled departure date. I cannot easily transfer an alien from Etowah to Batavia. I must first bring him to New Orleans. Since we did not know when a decision on Mr. Oyenuga's motion and appeal might be rendered, we prepared for a last minute window of opportunity to take him to Batavia by transferring him to New Orleans.



10. On June 8, 2004, ICE transferred Mr. Oyenuga from Etowah to Escambia County Detention Facility in Brewton, Alabama. Escambia is a facility ICE uses solely for short-term detention. It is reviewed annually against our "short term" national standards. We do not apply our "long-term" national standards to Escambia. En route to New Orleans, Mr. Oyenuga remained inside Escambia for 3 days.

11. On June 11, 2004, ICE transferred Mr. Oyenuga from Escambia to the Plaquemines Parish Jail in Louisiana. Like Etowah, Plaquemines is a facility that offers ICE low cost long-term detention beds. Unlike Etowah, ICE has staff in sufficient numbers to perform proper case management for aliens detained in Plaquemines without limitation.

12. Orleans Parish Prison in New Orleans, Louisiana is another detention facility ICE uses for long-term detention. It is physically located inside the New Orleans city limits; approximately 10 minutes drive from ICE's main office. We use Orleans Parish mainly to detain non-criminal aliens who are in removal proceedings. On September 14, 2004, ICE transferred Mr. Oyenuga from Plaquemines to Orleans. I can find no reason for this transfer. At the time of his transfer to Orleans, his removal proceedings had already ended. Although this transfer to Orleans Parish seems unusual to me, it is not prohibited by regulation or policy. ICE generally uses Plaquemines to detain aliens who already have final orders or are awaiting a decision on their appeals. Mr. Oyenuga was detained in Orleans Parish seven days and then returned to Plaquemines on September 20, 2004. ICE has not relocated him to another facility, and currently has no plans to do so.

13. Nigerian officials eventually agreed to re-interview Mr. Oyenuga. On December 28, 2004, the Nigerian Officials stated that they would issue a travel document once all court proceedings related to Mr. Oyenuga were completed. Mr. Oyenuga claimed that he had some other court action



pending. Although ICE could not locate a record of any additional court action, the Nigerian Government refused to issue a subsequent travel document until Mr. Oyenuga stated he had exhausted his right to file for any/all forms of relief. Efforts to convince Nigeria to issue a travel document continued.

14. Nigerian government officials have again interview Mr. Oyenuga. On March 29, 2005, Nigerian officials conducted their interview and informed ICE that they would issue a travel document in the very near future. Mr. Oyenuga is tentatively scheduled for removal to Nigeria on April 12, 2005.

15. On March 28, 2005, I received an electronic version of United States District Judge Patti B. Saris' order. Aliens are transferred from one jail to another for many reasons. To agree to not transfer this alien again would eliminate all possible consideration to future events of an emergent nature. For example, if this alien were to initiate a riot inside his present location of incarceration, and I determined that he needed to be relocated for the safety of the institution, the staff, himself or other inmates, I must have the administrative discretion to act accordingly. If this alien needed emergency medical care that another jail could provide, I need to be able to transfer this alien without first obtaining Judge's Sari's permission.

16. That said, I am completely aware of the Massachusetts district court's expression of interest in Mr. Oyenuga's detention location, and I declare that all good faith efforts will be made to not transfer this alien into another facility outside this field office, and only then for emergent reasons or for reasons directly related to this alien's removal to Nigeria.

I declare that the foregoing is true and correct to the best of my knowledge under penalty of perjury.



Executed in New Orleans, Louisiana on the 31st day of March 2005.

*[signature]*

Craig S. Robinson